IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>GLENN IRVIN GRIFFITH,<br>*Defendant.* | Case No. 1:26-mj-416 |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, William H. Bowler, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1. I submit this Affidavit is submitted in support of a Criminal Complaint and Arrest Warrant for **GLEN IRVIN GRIFFITH** ("**GRIFFITH**"). As set forth herein, I submit there is probable cause to believe that on or about June 19, 2026, in Prince William County, Virginia, within the Eastern District of Virginia, **GRIFFITH** did unlawfully and knowingly possess a firearm, to wit: one Glock 45 pistol, one Taurus G2C pistol, and one Anderson AM-15 rifle in furtherance of a drug trafficking crime, that is, possession with intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly referred to as fentanyl, a schedule II controlled substance, in violation of 18 U.S.C. § 924(c).

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been since November 8, 2024. I am also a Detective with the Prince William County Police Department ("PWCPD"). I have been employed as a police officer with the PWCPD since 2013. I have been assigned to the Street Crimes Unit ("SCU") since 2019. I am currently assigned to ATF, where I am federally deputized as a Task Force Officer with the ATF's

Northern Virginia Violent Crime Task Force. As such, I am a law enforcement officer of the United States within the meaning of Title 18 U.S.C. Section 2510(7), that is an officer of the United States who is empowered by law to conduct investigations and make arrests for federal offenses.

2. In my capacity as a law enforcement officer, I have investigated individuals for the illegal possession and use of firearms, illegal possession and distribution of controlled substances, and for committing violent crimes. Many of these investigations involved the execution of search warrants and led to the arrest and conviction of individuals for violations of state and federal laws.

3. I have received training in narcotics identification and enforcement, and I have made numerous arrests for the possession and distribution of controlled substances. As a result of my training and experience, I am familiar with the manner in which controlled substances are used, packaged and distributed. I am familiar with the methodology used in narcotics trafficking operations, as well as the unique trafficking patterns and language employed by drug dealers. I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, manufacture and distribution of controlled substances. Furthermore, based on my training and experience, I know that drug dealers often possess firearms to facilitate their drug crimes.

4. Through my employment, I gained knowledge in the use of various investigative techniques. These include the use of physical surveillance, undercover agents, confidential informants, cooperating witnesses, the controlled purchase of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, and the execution of search and arrest warrants. I have testified in trials, grand jury proceedings, and in preliminary hearings. I have also been certified as an expert in the distribution of narcotics in the General District and Circuit Courts of Prince William County.

5. The facts and information contained in this Affidavit are based upon my personal knowledge of the investigation of **GRIFFITH** and information obtained from law enforcement officers, reports, body worn camera footage, physical evidence and other sources. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of the above-mentioned materials obtained during this investigation.

6. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, that statement is described in substance and is not intended to be a verbatim recitation of such statement.

7. Because this Affidavit is submitted for the limited purpose of obtaining a Criminal Complaint and Arrest Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of the Criminal Complaint and Arrest Warrant.

## **PROBABLE CAUSE**

8. On or about January 2026, PWCPD SCU began investigating a male subject nicknamed "boots" for the distribution of fentanyl in Prince William County, Virginia. Using investigative means, PWCPD identified "boots" as **GRIFFITH**. Through the investigation, SCU identified **GRIFFITH**'s address as 9420 King George Drive, Manassas, Virginia.

9. As part of the investigation, a Confidential Informant ("CI") provided information to SCU regarding **GRIFFITH**'s narcotics distribution activity. The CI arranged to purchase narcotics from **GRIFFITH** by telephone communications with **GRIFFITH**. On or about May 2026, the CI completed a controlled purchase of narcotics from **GRIFFITH**. The Virginia Department of Forensic Science ("DFS") analyzed the substance recovered during the controlled purchase and confirmed that it contained fentanyl, a Schedule II controlled substance.

10. On or about June 2026, the CI conducted another controlled purchase with **GRIFFITH**. The CI arranged to purchase narcotics by telephone communications with **GRIFFITH**. During that encounter, SCU observed **GRIFFITH** exit the residence located at 9420 King George Drive, Manassas, Virginia ("RESIDENCE"). The Virginia DFS also analyzed the substance recovered during this controlled purchase and confirmed that it contained fentanyl, a Schedule II controlled substance.

11. SCU conducted surveillance and observed **GRIFFITH** to be present at the RESIDENCE during the day and night on numerous occasions. SCU's observations of **GRIFFITH**'s activities were consistent with him residing at that address.

12. Law enforcement believes the CI is reliable because the CI provided information against their penal interest in aid of this investigation. Moreover, during each controlled purchase, the weight and price of the narcotics were accurate. Law enforcement, using electronic and visual surveillance, monitored all the CI's controlled purchases. To my knowledge, the CI has not lied or attempted to mislead law enforcement within this investigation.

13. During the investigation, on or about June 19, 2026, law enforcement executed a state search warrant for the RESIDENCE, which is located within the Eastern District of Virginia. During the execution of the search warrant, law enforcement observed **GRIFFITH**, **GRIFFITH**'s girlfriend and a ten-month-old child inside a rear bedroom.

14. Law enforcement proceeded to search the rear bedroom ("BEDROOM"), which contained a bed and a dresser. From underneath a pillow on the bed, law enforcement recovered multiple plastic bags that contained approximately 96 grams of suspected narcotics. The Virginia DFS analyzed the substance contained in the plastic bags and confirmed that it contained fentanyl, a Schedule II controlled substance, with a total net weight of approximately 84.17 grams.



*Plastic bags containing fentanyl that were recovered from the bed*

15. Inside the BEDROOM, law enforcement located a black jacket hanging on the back of the BEDROOM door. The jacket was a large size, in that it was size "3XT", which is commonly known as size 3X Tall. **GRIFFITH**, at the time of his arrest, was approximately six feet tall and weighed approximately 320 pounds.

16. From inside the jacket, law enforcement recovered multiple plastic bags that contained suspected narcotics. The Virginia DFS analyzed the substance contained in the plastic bags and confirmed that it contained cocaine, a Schedule II controlled substance, with a total net weight of approximately 20.35 grams.



*Plastic bags containing cocaine that were recovered from the jacket*

17. From inside the dresser, law enforcement located **GRIFFITH**'s wallet, which contained an identification card bearing **GRIFFITH**'s name, **GRIFFITH**'s social security card, and a folded United States dollar bill that held a powdery substance.

18. From the dresser, law enforcement also recovered a black Glock 45 pistol S/N CGUM682, three firearm magazines, narcotics packaging materials and two digital scales with suspected narcotics residue. The black Glock 45 pistol S/N CGUM682, narcotics packaging materials and digital scales are depicted in the image below.




*Glock 45 pistol, digital scale, and narcotics packaging materials, located inside the dresser*

19. From underneath the bed, law enforcement located a safe that contained $13,970 in United States Currency ("USC") and blue colored plastic bag that contained approximately five grams of suspected narcotics. The Virginia DFS analyzed the substance contained in the plastic bags and confirmed that it contained cocaine, a Schedule II controlled substance, with a weight of approximately 4.97 grams.



*Safe from beneath the bed that contained cocaine and $13,970 USC*

20. During the search of the BEDROOM, law enforcement observed a blue bag. From inside the blue bag, law enforcement recovered three firearms: (1) a Ravens Arms MP-25 pistol S/N 1286976; (2) a Taurus G2C pistol S/N AEC132563; and an (3) Anderson AR AM15 rifle S/N 2159251.



*Blue bag that contained three firearms*



*Taurus G2C pistol (left) and Raven Arms MP-25 pistol (right) recovered from the blue bag*




*Anderson AM-15 rifle recovered from the blue bag*

21. Law enforcement continued to search the BEDROOM and located a bill of sale for the Glock 45 pistol inside the top dresser drawer. The bill of sale listed the same serial number that was printed on the Glock 45 pistol and identified the buyer as GRIFFITH. Additionally, a law enforcement trace report for that Glock 45 pistol showed that **GRIFFITH** purchased that firearm on March 4, 2026.

22. After the execution of the search warrant, **GRIFFTH** asked this affiant why his girlfriend was being arrested. I explained that she was being arrested "for a child charge because

there was a bunch of dope under the pillow next to the baby." **GRIFFITH** responded, "I just put it there, just now."

23. ATF Special Agent Samuel Supnick test fired the above-mentioned Glock 45 pistol, Taurus G2C pistol, Anderson AM-15 style rifle, and Ravens Arms MP-25 pistol. He found that the Glock 45 pistol, Taurus G2C pistol and Anderson AM-15 style rifle were operational firearms. However, he determined that the Ravens Arms MP-25 was not an operational firearm. During the test fire, the Ravens Arms MP-25 pistol failed to discharge a bullet and appeared to have a damaged firing pin.

(*Continued on next page*)

**CONCLUSION**

24. Based upon the foregoing, I submit there is probable cause to believe that on or about June 19, 2026, within the Eastern District of Virginia, **GRIFFITH** did unlawfully and knowingly possess a firearm, to wit: one Glock 45 pistol, one Taurus G2C pistol, and one Anderson AM-15 style rifle, in furtherance of a drug trafficking crime, that is, possession with intent to distribute a mixture and substance containing a detectable amount of fentanyl, a schedule II controlled substance, in violation of 18 U.S.C. §§ 924(c).

Respectfully submitted,

William H. Bowler

William H. Bowler
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to by telephone in accordance with Fed. R. Crim. Proc. 4.1 on October 19, 2026.

The Honorable William E. Fitzpatrick
United States Magistrate Judge